This is the time for argument in the case of United States v. Heredia in our on-bank re-hearing. I understand that counsel has already proceeded. Judge Kleinfeld is with us by video this morning. Can you hear us, Judge Kleinfeld? I can hear you fine. Very good. All right. Counsel, please, you may proceed. I thank you. Good morning, Your Honors, and may it please the Court, Eric Chomsky for Carmen Heredia. I'd like to reserve five minutes for rebuttal. Your Honors, United States v. Jewell was wrong when it was decided, and this Court should reverse it. At a minimum, however, if this Court declines to reverse Jewell, it should reaffirm the third prong of the deliberate ignorance test, specifically the motive or intent requirement that this Court has recognized half a dozen or more times, and that the United States importantly concedes is a necessary evidentiary predicate to a finding of deliberate ignorance. I'd like to begin with Jewell itself and the requirement in Section 841 that the defendant have acted knowingly. On a plain English understanding of that term, the statute requires awareness, actual awareness, not 100 percent metaphysical certainty, but what we commonly understand as knowledge. It is critically important in this regard that the government mounts no argument focused on the words of the statute itself, notwithstanding the repeated admonitions from this Court and from the Supreme Court that plain meaning is the starting point for analysis. The government also fails to respond to the structural argument that deliberate ignorance is, at least in this statute, fundamentally inconsistent with Section 841's requirement of a specific intent to distribute. Thus, to succeed, the government depends on the proposition that knowingly is, to use the government's own terminology, a term of art that the word carries some special meaning in this context, different from its common English meaning. So the government seeks to show that at the time Section 8 Deliberate ignorance does presuppose knowledge of something. It is not really complete ignorance. I mean, let's say you have a, this is not the facts of this case, but let's say you have a courier case, and the courier is told, you know, here's $500, carry this suitcase across the border, and there's something illegal in there, but, well, what it is. Let's say he's told that much, and it's not told whether it's drugs, whether it's somebody's head, whether it is fake iPods. Simply knows that it's, you know, so he knows he's violating some law, but he doesn't know whether it's the drug laws, or the importation laws, or laws against, whatever law there is against transporting body parts. I mean, there is knowledge there, and it is not really entirely fair to say that this is ignorance. All there is is ignorance of part, another particularly important part of the criminal act. Isn't that the case? Well, I mean, I think there are a couple of responses to that. The first is that that is a, to put it mildly, an unusual case. That's how hypotheticals work, you know. Sometimes they're unusual cases because they highlight a particular issue, so indulge me in that regard. To be sure, Your Honor, the answer to the question is that that would cause serious problems on any view of the appropriate legal standard, because whether it is an actual knowledge standard or a deliberate ignorance standard, you have to have the requisite level of cognizance that you possess a particular thing. This is just a synonym for knowledge, is it not? I'm sorry, I didn't hear the question. Cognizance is a synonym for knowledge, isn't it? Well, I mean, I think this, and this gets back to the other response to Judge Kaczynski's question. I mean, this ends up being a bit of a semantical game, perhaps, but I think the fundamental under- It is a game. It's a game of trying to hide knowledge of enough facts so that a jury can conclude that the defendant deliberately avoided wanting to know for fear that if the defendant knew, then he or she would be convicted of the crime. And the question is, at what point do you know enough pieces of the puzzle that the law requires or imputes knowledge based upon deliberate ignorance? Isn't that what the Juul instruction is all about? Well, and again, this gets back to the answer to Judge Kaczynski's question. In that, there is a meaningful difference between a knowledge instruction, between an actual knowledge standard and deliberate ignorance. I mean, this is what I meant to refer to in suggesting that it becomes a bit of a semantical game. There is some dispute, and the cases are not at all clear, on whether deliberate ignorance is meant to be a substitute for knowledge or is equivalent to knowledge or is a way to prove knowledge. But when you sort of get behind the issue, when you look at, for instance, I know the Hussack and Callender article that we cite in our briefs is helpful in this regard, talks about what knowledge is understood to mean, both from the legal and philosophical perspective. There is sort of a common sense of knowledge as justified true belief. And I'm not sure how much it profits us to get into a true epistemological debate about this, but the conclusion from Hussack and Callender and the same thing that most of the cases recognize, in fact, any number of cases recognize, is that what happens when you move from knowledge to deliberate ignorance is that you are substantially ratcheting down the level of awareness. And that's precisely the problem. Kagan. Well, counsel, in Judge Kaczynski's hypothetical, is the evidence sufficient to convict if the jury were to convict without a dual instruction? Is the evidence sufficient to convict without a dual instruction? Well, and this gets back to the original answer that I gave Judge Kaczynski. I think that that's problematic in that it's not clear that you have either knowledge or awareness of a high probability that you possess any particular thing, and that's what the statute requires. You have to knowingly possess a controlled substance. And so the problem arises whether or not you're in the world of actual knowledge. Is it a yes or a no? No. The answer is no. What about in this case? Counsel? Could I just follow up for just a moment? In this case, if we were to agree with you that there should never be a dual instruction, because that is your threshold position, is that correct? Certainly. What is the bottom line here, then? What happens? Do we set it back for a new trial? Well, I mean, and that gets to the sort of plain error, error correction analysis. We've asked here for a new trial. Candidly, I think that this is at best a marginal case. If you line this up against the cases in which this Court has held deliberate ignorance instructions to be harmless or harmful, the evidence here of actual knowledge pales in comparison to many, if not all, of these cases. I recognize that requesting a judgment of acquittal is an extraordinary request, and so we've asked for a new trial. You're not asking for a judgment of acquittal? Correct. We have not done so. I have a question for you. How would you compare circumstantial evidence that raises the inference of deliberate indifference with circumstantial evidence that raises an inference of actual knowledge? Well, the answer to that question, Your Honor, is we think that in many cases it's impossible to do so, and that's precisely the difficulty. Why isn't it possible to do so? Well, there are some cases. Garzone is one case. If you have circumstantial evidence that raises an inference of deliberate indifference, why wouldn't that same evidence, depending on its persuasive force, be enough to raise an inference of actual knowledge? What's the difference between the two? In other words, I'm agreeing with you. I don't think we need Juul. So why do we need Juul? Well, I don't think we do, Your Honor. Maybe that's a question for the government. That's why I asked you this question. What do you substitute for it? Do you substitute the model penal code definition? No, I think you use the Ninth Circuit's model jury instruction on knowledge is more than sufficient for that. And we've talked about that. Counsel, I don't understand how you can avoid the epistemological issue. Suppose, to very judge Kaczynski's hypothetical question a little bit, suppose the man in Mexico says, I want you to take this suitcase across the border. It contains ten pounds of cocaine. I suggest that you not open the suitcase and look because you will then confirm for yourself that I'm not lying,  as it is, if you get caught, you can say, I didn't know because I thought the man who gave me the suitcase was very likely a liar. I would say he's right. He doesn't really know because you don't know anything to a certainty. The man who gave him the suitcase might be a liar. But under your theory of the case, as I understand it, the man who carries the suitcase across is entitled to an acquittal. No, Your Honor. And now, if there is any lack of clarity on that point in our papers, I want to be absolutely clear about this. That is not our position. And that is part of the reason that we think the Juul instructions are not necessary. Precisely. All right. What would you say to the jury in the instruction then to deal with the defense? Well, I thought the man might be lying to me. And the argument by defense counsel, this is somebody who doesn't know from Adam. He's obviously some kind of criminal. Good chance he is lying. Well, that's a perfectly reasonable belief that he might be lying. Well, that's a perfectly reasonable jury argument. But this just gets back to a question of circumstantial evidence. Well, you need an instruction. The jury is going to come back with a question if you don't give them an instruction. Just how sure does the person have to be? Well, this Court, sitting on Bonk v. Aguilar, said that knowledge is not a term of art, and citing a line of prior decisions of this Court, it suggested that with certain commonly understood terms, knowledge being one of them, you may cause more problems than you solve by attempting to define it further and further out. I would submit that simply defining it as knowledge, which is what the statute requires, and then the model penal code, the model Ninth Circuit jury instruction points to awareness, for instance, or cognizance as a way of getting there, and coupled with a circumstantial evidence instruction, that is ample for, on those circumstances, the jury to find actual knowledge. And, in fact, in Jewell itself, the Court specifically said that. There's a paragraph in Perkins on criminal law that's very helpful on this. It says, suppose a man has been told that a certain bill of exchange is a forgery, and he believes the statement to be true. Does he have knowledge? No, if the question is whether he's qualified to take the witness stand and swear that it's a forgery. But if he passes the bill as genuine, yes, he will be uttering a forged instrument with knowledge. I think Perkins is right on both of those, isn't it? I'm not sure. I would start by saying that I'm not sure how far I would go in following Perkins. What I would say about James Perkins is, if you read through its discussion of knowledge, very far removed from any modern American conception of knowledge. It suggests at one point, I believe, that negligence may be enough to prove knowledge. And so its authoritativeness, I think, is somewhat in question. But I think this gets back to, again, some of the same questions Judge Coleman and Judge Kuczynski were asking about what you actually need to prove knowledge. And this is where I would go back to Jewell itself. Jewell actually says in a passage that doesn't get much attention that on the facts of that case, which are the sort of paradigmatic facts of one of these drug courier cases that this Court seems to typically have in mind when it's addressing one of these issues, there was, in fact, actual knowledge there. But then it goes on to say in what may be lengthy dicta, but obviously has become the law of this Court, that deliberate ignorance, nonetheless, may be necessary in some of these cases. But I would say, to specifically answer your question, that you can get there just with an actual knowledge standard. I would think either under the sort of epistemological framework that I adverted to or simple common parlance that the person who is handed a case, told that it contains a controlled substance, is given money to transport it, that most people locked and sealed, it's perfectly obvious that the case has not been opened, that the courier has not seen its contents. There's a date there, a notary that says, you know, this case was locked at some point in the past on the other side of the border. And he says, look, I was handed this thing. Obviously, I didn't look into it. I didn't know. It's a pretty good argument. In fact, he didn't know. There could be a cat in there. It's like Schrodinger's cat, right? Well, he didn't know to a moral certainty. But this gets to exactly the point that Judge Kennedy made in his Juul dissent, that a hypothetical lockup. Because, look, I wasn't told anything. Somebody said, here's 500 bucks. Take the suitcase across the border. You don't need to know anything. We're not going to tell you anything. All you need to know is you've got a suitcase and $500. Walk across the border with it. Now, how much more does a courier need to be told? How much more are couriers normally told? Well, it's not clear that they're told. They don't usually get handed and say, you know, here, you know, expect the merchandise. Look it over. Taste it. Make sure it's good. These are couriers. These are people who don't have a stake in the transaction. Well, that's right, Judge Kuczynski. But it's not clear to me that the courier needs to be specifically told something. In Juul, for instance, there were surrounding circumstances from which a reasonable jury could conclude that the person actually knew that they were going to be couriering drugs. For in – I'm sorry. If I understand your position, you're saying that you could know without actually seeing it. That's absolutely right. And that's exactly how we use the word knowledge or knowingly in common parlance. You know things because, getting back to the epistemological issue of justified true belief, you have some justification for it. The surrounding circumstances give rise to suspicion, belief, and at some point that matures into knowledge. For the jury to decide. And that's absolutely our point, Judge Fragerson, that under these types of suspicious circumstances, again, a sort of paradigmatic Juul case in which you have a drug mule, absolutely that goes to the jury, and then it's a question for the jury to decide whether the person had knowledge. Well, why would you be back here saying, look, there's an absence of sufficient evidence because the jury has not been – I mean, the prosecution, which carries the burden of proof, has failed to present any evidence that the courier was aware – the person carrying the bag was aware of the contents, was even aware that this was drugs as opposed to gray market merchandise as opposed to anything else. Zero evidence. I mean, this is exactly what you'd be up here arguing. I'm not sure that that – well, I have no doubt that someone will indeed be arguing that because that's the push and pull of the law. But, Your Honor, I think – It's not a game. You know, criminal law is not a game. Well, it's absolutely not a game, Your Honor, and I don't mean to suggest otherwise. My point is simply that under those circumstances, in most of these cases, in the quintessential Jewell case, there will be evidence that can go to the jury on this. And the question is whether the jury believes, whether a reasonable jury could believe that the person knew. And under the circumstances, again, I would point to Jewell. Senator, if we were given the opportunity to work with a patient and we were to see Jewell, the essential outlines of Jewell, is it your position that something is inherently wrong with the patient's description? Well, our argument is both, Your Honor. Our primary argument is that Jewell should be overruled. Our secondary argument is that the Jewell instruction that was given here is defective. And then our third argument is – It appears, my understanding from looking at the other circuits, is that it's consistent – essentially consistent with the other circuits. It's not consistent with the Eleventh Circuit. And it is a – Half this instruction go along the lines of the Ninth Circuit. No, that's right, Your Honor. I would add a couple of things in response. First of all, this Court has recognized that third element of the Jewell instruction any number of times, most significantly in Barron and Shannon. Barron is absolutely explicit about this in Footnote 3. Rather than a rationale. Why is it an element rather than a rationale? Well, I mean, the – I mean, it's a piece of paper. It's a whole instruction. And it is an element that has to be put on the reasonable doubt. Well, first of all, Your Honor, I think Barron says otherwise. Barron specifically says this is an element that – Yes, everything's on the table. Well, absolutely, Your Honor. Just to be clear about what's on the table thus far, Barron and Shannon and half a dozen other of this Court's decisions do say explicitly or implicitly that it is an element. The second thing, and this I think makes it a very easy case, Judge Reimer, in this regard, is that the government has conceded that this is a threshold evidentiary consideration. That is the language that it uses in its briefs. This is a threshold evidentiary consideration that the government must put forward evidence on this. And so that makes this very easy. With that concession, the Sixth Amendment says that this must go to the jury. And this isn't even just the Apprendi line of business. But that's just the defendant's state of mind, is it not? I mean, that's just the general intent, if you will, to commit the act. That's not necessarily an element of the offense. It's to avoid being convicted for something that you were completely unaware of. Well, Apprendi says in so many terms, in so many words, that intent is the quintessential element, and to the extent that evidence of it must be put forward, then it has to go to the jury. And this is not just the Apprendi line of cases. This goes back to Winship. Not motive. Why the defendant chose to be deliberately ignorant is not an element of the crime. I mean, it's, you know, it's a completely made-up thing. It's a kept – Juul certainly does not require proof of why the defendant chose to be deliberately ignorant. Well, Juul doesn't in so many words explicitly require it as an element, although the language of Juul almost gets you there. And it says that in order for deliberate ignorance to be available, in order for there to be a conviction for deliberate ignorance, that the defendant must have attempted to, in essence, evade the strictures of the law while violating it. That then, at least at the time of Pacific Height and Fur, which is 21 years ago now. It was part of a plausible reason why somebody would evade knowing if you are – if you are – and so it is natural enough that the cases throw that in by way of descriptive explanation. But there's no – there's no requirement. It doesn't really matter. If I'm going to state of mind, it doesn't matter whether somebody deliberately ignores knowledge in order to avoid a criminal conviction or for any other reason. The point is they go through the same mental steps. Well, I think there are two issues, Judge Kaczynski. One is whether the cases do in fact require that. And they do. Pacific Height and Fur says there must be evidence of this, and Barron says it has to be an element. And so would Vickie. Counsel? I have found the most insufficient evidence to show that actually. But I mean, I think the evidence has to be told that there's an element to it. If the question – if I understand the question, Judge Bea, whether Pacific Height specifically held it, whether it was necessary to the result, and I understand that there is a long-running debate on this Court about what constitutes a holding and what constitutes dicta, the Court clearly said in so many words there must be evidence of this. But whatever Pacific Height and Fur did or didn't hold or say, Barron absolutely said in so many words. I'm going to play that case. The actual decision is whether to carry. And there's a deliberate avoidance to find out whether to carry. And the witness testified in the defense of a case specifically for his right to defend. I as well, I don't think there's a problem. At all. I'm sorry. Would she be guilty or could a jury find her to be guilty on those facts? Well, I think that's right. And again, this just gets back to the same questions about whether circumstantial evidence gets you there. A jury could. I think it should, Your Honor. And I think it should precisely because of the difficulties of being in the world of deliberate ignorance instructions. Once we get past the point of overruling Juul. Well, I'm not sure that it's necessarily less criminal in that case. The danger is, this gets to the question again of what happens when you ratchet down the awareness requirement. Once you get, once you bring it down from actual knowledge and you say, well, you just have to be aware of a probability of these facts. You enter a realm in which the jury is speculating as to what someone might have inquired into, should have known. And the mode of inquiry becomes critically important for placing some sensible limitation on this doctrine. And we would say. Counsel, why can't we solve that problem just by adding a sentence saying negligence or even recklessness in failing to obtain the knowledge does not constitute knowledge? I think the answer. You can't convict if you think he was merely reckless or negligent in failing to confirm his belief. I think the difficulty with that, Your Honor, is the same difficulty that this Court has recognized in at least three or four decisions in which notwithstanding an admonition to the jury that carelessness isn't enough, the Court has nonetheless expressed concern that a jury might, notwithstanding that admonition, convict on a negligence theory. Counsel, I'm sorry. Did I interrupt you in the middle of a sentence? No, no, not at all. I just, if you seem to acknowledge that you can have knowledge without actually seeing what's there. Yes, Your Honor. Okay. Why wouldn't this defendant have been convicted whether or not it was a dual charge given the dual instruction given all of the circumstances? Well, I think there are a couple of different ways to get to that, and I see that my time is running out. Maybe you could cover when you're doing that. I did have a question on how was this jury actually instructed? Were they given law on both actual and deliberate ignorance? I think in your brief you said this is just a deliberate ignorance case. Yes, Your Honor. Was the jury instructed as to both theories? Yes, Your Honor. The jury was given a knowledge instruction and a deliberate ignorance instruction was given as well. But the difficulty here, of course, is that the prosecution said on a number of occasions in absolutely plain terms, the prosecutor said, I did not put forward an actual knowledge case.  And I think this gets to your question, Chief Judge Schroeder, about what exactly you do here. Now, there are obviously two different ways you can go, and there's a question of whether we're under plain error or harmless error, depending which argument we're talking about. But at least as for the notion that this was a harmless error or it was not a plain error because there was evidence of actual knowledge, I think that pretty much answers it. I'm not sure I understand the question. I don't believe there was a separate appeal on that issue, Your Honor. I'm not sure where that gets us, Your Honor, and, again, I apologize if I'm not understanding the question. I mean, if I understand where the question is going, it's whether something has been foreclosed here by the failure to appeal the denial of fiduciary directed verdict. Yes? Again, Your Honor, and I apologize, but I'm afraid I'm not following the question. And I'm not sure, I'm not sure that the failure to appeal the directed verdict necessarily gives us enough evidence to sustain the conviction. She said she figured it out that there were probably drugs in the car. She just said she did it too late. Why could the jury not believe her when she said, look, I figured out, my God, I might have drugs in the car, but this believer has to the point and decide that she figured out much earlier than she admits and therefore could easily have stopped and looked in the trunk. How much drugs were there in the bag, by the way? 349 pounds, Your Honor. That's a lot in the trunk. Well, that's right. But that doesn't prove anything. That just proves that the drugs were there. That doesn't prove that she had actual knowledge of them or that she deliberately avoided them. No. I mean, it's a lot of drugs. But why couldn't the jury believe when she said, look, I figured it out, but just disbelieve her as to when she figured it out? Why is that enough to justify the instruction? Let me quickly answer your question, Your Honor, and then if I could reserve the remainder of my time. I think it's very careful to be fastidious in characterizing what exactly she said here, because there has been some loose discussion about what she found or what she said or what she figured out. She at no point said, I figured out a plot, a scheme that the drugs were there. She said she had some suspicions based on the fact that her mother and aunt were nervous that there might be drugs in the car. But that is not a determination. That is certainly not knowledge that she was committing a crime, that she possessed drugs. Enough to justify a finding, an instruction that she had deliberate ignorance if she had been in a place when she did this, when she figured this out, where she could have gone and checked. She's at a point where she says, I think there might be drugs in the car, right? That's certainly enough coming out of her mouth to justify an instruction. I'm not sure that it is, Your Honor. For the reasons we've said, I see that. Why is that? Why is that? I mean, why is it not enough? If I may, Your Honor. The answer is that she didn't have, we're in the realm, I take it, of dual instructions. The question is whether she had awareness of a high probability that she possessed drugs. She said it. She said it. No. She said that she suspected that there might be some drugs in the car because of the suspicious way that her mother and aunt were acting. It is not at all uncommon, for instance, for someone to be driving a car and someone else to have a small amount of marijuana on their person for personal consumption. But that wouldn't make her aware of a high probability that she was a drug courier. Okay, counsel. We will give you a minute on rebuttal if you really want to use it. Thank you, Your Honor. We need to hear from the government. Before you begin, could I ask Judge Kleinfeld, please, your microphone is very close to your papers, and we're getting a shuffling noise. Oh, thanks. Thank you. Good morning. May it please the Court. I'm Chris Cavanius from the District of Arizona. And the government respectfully asks this Court to vacate the three-judge panel decision in this case and affirm the conviction. I'd like to actually, because of the Court's questions that have been posed, I'd like to actually move to the jury instruction question because I think that Judge McKeown, Judge Bee, Judge Clifton, Judge Reimer, Judge Tallman, Judge Kaczynski. Special verdicts asked for here? I'm sorry? Did the government ask for a special verdict? You mean whether or not the jury made a conviction based on either deliberate ignorance or actual knowledge? Right. There was not a special verdict requested now. That would have been a better practice. Well, Your Honor, we would respectfully submit that, number one, Juul shouldn't be overruled. I just want to make sure I say that. Certainly, that's an argument that's been advocated, of course, for the first time on rehearing on Bonk, which is probably not the best time for the Court to be reviewing it. However, we wanted to just specifically note in our briefs we talk a lot about this. I think it's been vetted out in the briefs about why stare decisis should not operate to overturn a decision that this Court has had for 30 years, which the Tenth Circuit's had for 40, and where Congress has chosen not to amend that particular statute. The circuits are unanimous, so there's no intervening authority that would suggest and undermine it. There's a judicial gloss placed on the statute once it's been interpreted that way, that knowing does include deliberate ignorance. And, of course, we submit that. Your Honor, I submit that it also applies to appellate court decisions because the Supreme Court in Evans, which overruled this Court in Agawam, stated that Federal appellate court treatment had also supported why it was overruling this Court in Agawam. The judicial gloss is found in Judge Wallace's dissent in Agawam, where he notes that when it's been interpreted consistently over a period of time, then it does attain that judicial gloss. So we submit yes. We would, Your Honor, this Court should not overrule Jewell because the defendant hasn't met his heavy burden of overcoming stare decisis in this instance, and also that even if the issue was debatable, that's just not sufficient 30 years later. And I'd cite Sheppard. I'd cite Dickerson, where the Supreme Court declined to overrule Miranda 34 years later using language, even if we were to disagree with this case in the first instance, stare decisis weighs heavily against overruling it now. All of that language, again, strongly suggests that Jewell should not be overruled by this Court now. So if we don't overrule it, we do have some excuses of judicial gloss. But much of that judicial gloss is not included in this instruction. So what role does that play in light of the various arguments of her counsel that the government actually concedes that there may well be an additional special consideration when you have a Jewell expression that's not included? Number one, Your Honor, the government's statement about that consideration was a statement of how it appears the court has treated it, not that it's been required in the instruction and not that the government's ever had to prove motive beyond a reasonable doubt. That was that kind of a statement. It's the instruction. I'd like to talk about the instruction. It is sufficient here.  Jewell instruction created, it was created in 1982 when the Court first adopted model Jewell instruction, model jury instructions. I know Judge Schroeder was on that, back when the circuit had its own members sitting on the jury instruction committee. And the Jewell instruction, then, used for 24 years. Again, there's a theme here. The defendant is asking this Court to chuck a decision that's used for 30 and an instruction that it's used for 24 years, and the Court should respectfully decline the defendant's invitation. We know this instruction was sufficient under Jewell, because you can actually look at how the Court's, this Court has treated that. And there are many decisions of this Court where motive is not mentioned. Judge? Well, let's say we, let's assume right now that I agree with you, that the instruction was sufficient. Does something have to be said about Barron and that third prong for the defense? I mean, is? Your Honor. I mean, we're sitting on Bonk. Yes. I think understanding how that arose is important, because you can see that it sits on a very slender read. What you have is that language, dealing with the motive, comes from Judge Kennedy's dissent in a three-judge panel decision in Murrieta-Bayorano one year after Jewell was decided. There's no citation to Jewell, because, again, Jewell does not require it. Number two, we have Garzan citing that case, but then not applying it to the question of whether there's conscience avoidance. So we don't have that. In Pacific Height and Fur, where Judge Kennedy then sat as a majority judge and was able then to cite that language, citing Garzan, citing his dissent in Murrieta-Bayorano, again, it's not something that has support in the majority mandate in Jewell. So what happens is Barron then has that footnote, and you have several cases where this Court is citing that authority. So Pacific Height and Fur is 25 years ago, right? I'm sorry? That's a 25-year clause in Pacific Height and Fur, right? So Pacific Height and Fur cited that language, but then never required it as something that needed to be proven at trial or included in the instruction. And that's the key here, is this Court, even if you look at all the decisions, including Barron, including Pacific Height and Fur, including Garzan, and all the other decisions, where the Court mentions motive, it's never something that's required to be proven beyond a reasonable doubt or in the instruction. And that's why this Court is not stepping aside for some reason if it deems that it's not something that needs to be proven at trial. Let me ask you a question. Why did the government need this Jewell instruction? Your Honor, I think that goes to what Judge Kaczynski and I think Judge Reinfeld had cited, that they need to be on site. Answer what I'm asking. Yes. Why did the government need that Jewell instruction? Because the jury needed to be told that willful blindness is not a defense, because the defendant was taking the stand and testifying that she had these suspicions that were drugs in the car, but she did not deliberately avoid. Now, if you satisfy the Jewell instruction, all right, you got that evidence. Why can't you just argue that same evidence as evidence of knowledge? There is some evidence. Tell me why you can't do that. Your Honor, because there are certain cases like this one where, based on what the defendant has testified, that this instruction was not given until after she testified and was not ruled upon. So she testifies that she has these suspicions that there are drugs in the car, but it arose too late in the game for her to do anything about it. And the jury needs to be told that if the defendant is found to have this high probability of awareness of the facts in question and deliberately avoided going to truth. You can argue that. You can argue that same thing to a jury. We would argue to a jury. I think this instruction just gives the prosecution a leg up. Your Honor, actually what it does is ensure that defendants who act with knowledge are held accountable, because deliberate ignorance is the equivalent of knowledge. You can argue that right to the jury. Your Honor. Let the jury decide. I mean, seriously. I agree with the comment I think made by another member of the panel that the jury has to be told that that's not a defense. That that willful blindness is not a defense. You're not stupid. You can take the same evidence that we have here and go argue that this woman had knowledge. Your Honor, again, I would submit that this Court's precedent and also the precedent of all other circuits permit willful blindness to be a method of demonstrating that the defendant has knowledge, because this Court said it 30 years ago, that a person can have knowledge of things of which he or she is not absolutely certain, and deliberate knowledge and positive knowledge or, excuse me, deliberate ignorance and positive knowledge are equally culpable. And I think Judge Reimer said that. Counsel? Yes, Your Honor. Help me a little with deliberate ignorance. Sometimes the way prosecutors argue it and sometimes the way the cases talk about it, it means being suspicious and failing to check. And I'm worried about that, because my guess is that most of the transportation of drugs in this country, well, I don't know most, but a whole lot, is probably by the U.S. Postal Service and Federal Express. My guess is that they know it. They know that some people, among all the millions of packages they ship, are and some raunchy-looking characters walk in there with a hand-addressed package. And they could easily, if they wanted to, have trained dogs to sniff packages at their depots. So it can't be enough that they just avoid finding out and are careless. How do we distinguish the criminals from FedEx? Your Honor, the jury instruction already does that. The model jury instruction that this Court's used already makes sure that the jury finds that she deliberately or he deliberately avoided. That's the stopgap. Additionally, the jury is told that they cannot convict the defendant for being simply careless. And if the defendant has a belief that there aren't drugs in the car, they have to acquit. So that's already in the deliberate ignorance instruction, and that's how we ferret through these cases. And what we have here is a situation where the jury heard the defendant's Why does that get FedEx and the Post Office off? Well, in your scenario, you said that they avoided, but there was no evidence, at least from what I could tell from what you were saying, that they deliberately avoided, unless I mistook the scenario. It would not surprise me a bit to know that the Post Office and FedEx both have internal studies that say probably 1 percent of the packages that we're shipping  I don't have information on that, Your Honor. It would just be a smart way to ship, so people must do it. And the Post Office and FedEx must know that people do it sometimes. Your Honor, again, I submit that the jury instruction that is given in this case, which not only, by the way, encompasses what the jewel majority wanted, it encompasses what the jewel dissent wanted. And it has that language that precludes that negligent conviction and a reckless conviction. Let me ask you another question, though, about semantics, because I think they are important here. We agree that you can't just be careless or negligent, and then you use the word willful avoidance. Where does recklessness fit into the scheme here? Is it enough if the defendant is reckless? Your Honor, the jury instruction, again, that was used in this case precluded a conviction based on recklessness, because as we note in our brief, and you can look at the model penal code, there's a footnote 42, I want to say, where they specifically use the language high probability to ensure that there would not be a conviction based on recklessness. And also, we have that language in the jury instruction that requires the defendant to be held not guilty if he actually believed there weren't drugs in the car. Those are reasons that this is different than recklessness. But you wouldn't have the objection if the jewel instruction said you can't be just careless or negligent or reckless. No. Because the jewel, again, you don't have to do that, because the jewel instruction as it stands right now, well, not right now, it's been amended. It's amended. But it says simply careless, and also that high probability language already takes care of that. So the instruction just does not need to be messed with. And I'd like to actually get to that point, because the way that the instruction reads now in the wake of the Heredia panel decision just clearly shows why it is the instruction can't stand. We have this requirement of specific evidence that they put in here, which the panel has stated. But again, that seems like it's creating almost a third class of evidence. There's direct, there's circumstantial. You can make inferences of knowledge from those and deliberate ignorance. And by the way, the defendant concedes in his reply brief, page 8, that you can have an inference of knowledge and that that's sufficient under the statute. So we just wanted to point that out. But the way that the jury instruction reads then, this last bit or the third bit they've added, reasonable opportunity to abstain from or to discontinue criminal activity, that's already taken care of by the term deliberate. Also, there were several questions asked by the panel members about motive. And, you know, elevating motive into something the government needs to prove beyond a reasonable doubt is not ordinarily something that the government needs to do. Even in murder cases, we have to prove a defendant committed the crime. If you're going to have to prove that someone knew it, you have to prove they knew it. And if you're looking for a substitute, then it has to be an awfully good substitute. And it comes in that context. It's not just a general requirement that motive is demonstrated. If there's actual knowledge proved, motive is irrelevant. So it isn't just a free-floating requirement for proving motive. The problem, though, Judge Graber, is it? The problem with that, unfortunately, is the motive that they have here, that the defendant deliberately avoided taking the steps. She sought to provide herself with a defense in the event she was later prosecuted. That now suggests we have to – actually, it doesn't suggest. It means, I think. We now have to prove the defendant knew her acts were unlawful. But that tramples all over the knowing instruction, which was also given in this case and says that the government is not required to prove the defendant knew that her acts or omissions were unlawful. If you ask them the simplest solution, be the one that the defense proposes, which is that knowing knowledge means knowledge, but it can be demonstrated by a wide variety of evidence including circumstantial evidence and the jurors using their good common sense as to what they believe and don't believe. Well, in knowledge cases, we argue, and sometimes, again, in lots of cases where there's no conviction, there's proof of circumstantial evidence. But when a defendant tries to suggest that she was deliberately avoiding learning the truth, we need to tell the jury that that's not a defense, that that is also a state of knowledge, and that's why we need it. That's why we need it. Well, why can't you simply argue from it that if the person went to all those lengths to avoid looking, they must have known, because otherwise, why wouldn't they look like any curious person would? I mean, why is that an equally potentially successful argument to a jury? You know, the kid who doesn't take their watch with them and then says, oh, it was my outpast perfume. I just didn't notice. I mean, what parent is going to believe that? What juror is going to believe the kind of argument that you're suggesting will, you know, detriment the prosecution? I guess the key thing here is that we need to ensure that defendants who commit knowing possession crimes are held accountable for what they did, and we need to be able to tell the jury that deliberately avoiding learning the truth is a state of knowledge and that's why we convict. Don't we also need to protect against the possibility that someone actually didn't have knowledge? Your Honor, the instructions do that. I mean, if it does happen that people cross the border into Mexico and drugs get planted on them? And that is where the instruction already takes care of it. The deliberate ignorance instruction that this Court's used takes care of that. If the defendant did not have a high probability of awareness of the act of the drugs What does high probability mean to you? I'm sorry, Your Honor? What does high probability mean? Does that mean over 50 percent? Does it mean 30 percent? Does it mean 80 percent? A high probability means more than substantial according to the model. What does that mean? Can you tell me what the significance was of the trunk not opening? How did that play into the calculus here? Well, Your Honor, for I'm curious as to what Judge Clifton was talking about. If, say, someone gives you something that's locked and you can't open it. Well, number one, I wanted to note that the defendant did say that she normally checks her cars before she drives them. That's on pages 141 to 142. So the jury could properly conclude why isn't she checking the car this time, particularly when she said she had this suspicion back when she smelled the downy. And we know that when she got in the car, this occurred. So at that point But what was the evidence about that the trunk Trunk button?  What we have is Aunt Belia testifying that the defendant and her boyfriend husband, Angel, showed up and that they put, and I think the evidence is that the defendant was there and Angel was putting the car seat and the diaper bag in the trunk, and he used the trunk button to access it. And you can find that in Aunt Belia's testimony. So the jury could conclude that she had access to that vehicle, could have placed the marijuana there, or also back when she had this suspicion, the jury could find the timing of it, was when she had smelled that odor when she got in the car. That she had the ability at that time to look in the car. She chose not to look in the car, and that's undisputed. Because she already knew what was there. That's the inference that the jury would be entitled to draw, that she had actual knowledge. Why couldn't they just The trunk button supports both inferences, but it supports also why she had deliberate avoidance, why, although she suspected there were drugs in the car, she deliberately avoided learning the truth. That also plays into that. And they're not mutually exclusive propositions. Yes? Counsel, I'm still having trouble with what knowledge is. It sounds real straightforward to just say knowledge, but I don't know. And it gets harder when you get out of drug cases. The only jewel case I've had was a tax evasion case, skimming, Mapelli. Mapelli, yeah. Suppose somebody says, I'll give it to you cheaper if you pay with cash instead of a credit card. Well, if they mean a check, I figure they're trying to avoid Visa's fee on the transaction. But if they say, no, no, I mean currency, I immediately become suspicious that they're skimming. They're not going to pay taxes if I pay in currency. Does that mean that because I'm suspicious, unless I ask them whether they're paying their taxes honestly, I'm aiding and abetting tax evasion? Well, the question of whether an inquiry needs to be made is something that this Court said is a proper consideration in determining whether somebody acted deliberately. I think that was in Nicholson and a couple of other cases as well. So there is, to the extent that we have a defendant who has a suspicion that there are drugs in the vehicle, the jury needs to be told that this person cannot deliberately avoid learning the truth. And asking questions or checking things are reasonable inferences for a jury or checking things or asking questions. Then you're telling me that if the restaurant says currency only or if whoever is selling the piece of artwork to me or whatever says I'll give it to you cheaper if you're paying currency, then I do have to inquire or else I'm guilty of aiding and abetting. I just want to make sure I understand the facts of what you just said in your hypothetical. Well, before I answer that. I'm buying a painting from a man. His posted price is $300. I give him my credit card. And he says if you pay me in cash, I'll give it to you for $250. And I say, oh, I'll write a check. And he says, no, no, I mean cash, currency. At that point, I have a suspicion that he's not going to pay income taxes on the $250. And I think you're telling me that because I have a suspicion, I have to inquire about whether he's going to pay taxes on the $250 or else I'm guilty of aiding and abetting tax evasion because I had a suspicion and I didn't inquire further. I'm trying to think, you know, usually in these cases, we have a defendant who is making a statement of some sort, which sort of pops up this notion that there's a suspicion and that he didn't do X or Y. So add to Judge Kleinfeld's example that as he hands over the $250, he laughs and says, well, I guess what I don't know won't hurt me. Your Honor, that's a close case in terms of trying to think these hypotheticals sometimes. I'm trying to think about whether that was deliberate ignorance. You think that is knowledge. What I'm really asking is the epistemological question. What's knowledge? I mean, at the other extreme, somebody could say, I want you to carry this marijuana across the border for me. Look, it's marijuana. And he shows me the plastic bags. I would know a plastic bag of marijuana from a plastic bag of quinoa and oolong tea. And he may be lying. I don't really know it's marijuana. I don't know what knowledge means. Well, again, I think, I guess maybe all I can say is that the instructions in this case, you know, if we have evidence that you deliberately avoided learning the truth, it seems to be more. By sending the plastic bag to a scientific laboratory? I mean. But, see, again, those facts that you're describing are not completely on par with the cases that the Court has found there to be sufficient evidence of deliberate ignorance. But suffice it to say that if the defendant is trying to float a story like we have in this particular case where she had this suspicion, but then there are all facts and circumstances indicating that she did not take steps, including looking in the car, including asking. I think I've confirmed your position. It is that suspicion plus failure to investigate equals knowledge. It shows deliberate ignorance, which is the equivalent of knowledge. Yeah. But what you're really saying is that suspicion is equivalent to high probability of awareness. Well. To me they're different. The high probability of awareness, and maybe I'm just getting confused by the jury instruction that's been crafted in the wake of this Court's decision where they use the term actual suspicion, but the fact of the matter is the jury instruction in this case requires a high probability of awareness of the actual question. What does that mean to you, though? I mean, obviously it's statistically probable, 90 percent, 95 percent. What does it mean? And you have to prove high probability beyond a reasonable doubt. What does that mean? Well, when you have, I guess all I can do is bring it back to this case again. When you have a defendant who is admitting that she has a suspicion and combining with all the other facts that you have here, and then you have evidence that she did not take steps to or she took steps to deliberately avoid, then you have a situation where the person is equally culpable. Well, how do you benchmark high probability? And that's, you said the model penal code, but most of the jury doesn't actually have that in their pocketbook or their briefcase. So how is the jury to make any sense out of this term, high probability? Well, Your Honor, they've been doing it for 24 years, and it's a matter of fact. Very well. But maybe because, maybe they've been importing a lower standard because we don't they don't know what high probability is. Well, again, I just submit that the jury instruction tells them at least the high probability of the awareness of the facts in question. We rely on the jury to ordinarily understand what the high probability of awareness of an act is. I'll tell you what it is. I've got a B in evidence. I'm sorry, Your Honor? I'll tell you what it is. I've got a B in evidence. I gave one A and two Bs at Berkeley. High probability is highly probably true. See, that's just below beyond a reasonable doubt. It's not less than beyond a reasonable doubt, though. I said it's just below a persuasive effect beyond a reasonable doubt. So you're saying you have to have a high probability, so it's highly probably true beyond a reasonable doubt that all this happens. It has to be coupled, though, with that deliberate avoidance, which is why it's not just one or the other. And again, that instruction is what keeps the jury from finding based on negligence. But you have to find deliberate avoidance beyond a reasonable doubt? That's what this instruction has read, yes. And it's changed. What's your office's policy respecting requesting a judicial instruction? Is it requested in every instance where a defendant takes the stand and denies knowledge? I don't know the answer to that. I know that all I can talk about is right here. Well, you're the head of the appellate section in the Tucson U.S. Attorney's Office, aren't you? I am. So the trial lawyers don't consult with you about when they should request a jewel instruction or not? There are a myriad of cases that are handled in our office, and I don't have personal knowledge of all of them. What facts do you show that she deliberately, she engaged in deliberate indifference or? Well, we have, again, her incredible testimony where the jury could then conclude that she suspected earlier and did not take steps to either. Well, she was supposed to, wasn't she? Well. And what step along the way? And again, this gets back to the Court's decisions in Nicholson, Murrieta-Barerano and McAllister, where this Court properly noted that the defendant's. I'm just going to ask other facts here. Yeah. And the deliberateness can be shown through a failure to ask questions. That's what I cited those three cases for. And here we had, when we have her saying that she suspected, we have the Downey story back when she got in the car and asked us. But she asked her mother about it. She asked my aunt about it. And she was thoroughly dissatisfied with the explanation, and that would, the jury could find a trigger, what would be sort of conscious her not following up on this if you believe her story, that she had this epiphany as the last exit before the trial.  But I think that's important, because if the jury finds that she is lying about when this occurred, they could find that she's lying about this Downey story because she backs off of that at trial. But also, she didn't ask her occupants, I guess, who she thought were acting really suspiciously. She didn't check the car, even though she testified that she checks the car before she drives the car. And she also knew that her, we have the jury could find that the odors meant something to her, of course, because she testified they did, that the perfume odor. The jury heard about the overwhelming smell of detergent. We submitted photographs showing the overwhelming smell of detergent that was in there. Sotomayor, did the government take the position before the district court that there was actual knowledge? The government did, that there is both actual knowledge and deliberate ignorance. We provide self-citation in our brief. At this point, any facts or any additional facts to show actual knowledge? I'm sorry? What else did you, what did you point to to argue actual knowledge? Well, actual knowledge also, we have, you know, the whole notion of that having access to the vehicle when she was in Amphilia's, the overwhelming amount of marijuana there was in the car, the smell that somebody would have smelled because the agents did. They could smell it in the cab. The trunk button, I think I mentioned that, that she had access to that. We have her incredible testimony, you know, that the jury could conclude that she was lying, therefore, was entitled to conclude that the opposite of what she testified to is true. So if she said she didn't know, she did know. And if she says she found out but too late, they're entitled to say, no, you found out early enough to take steps. And so we concluded deliberately avoided. Well, that's a mouthful. It sounds like an actual knowledge case, just what you went through. There are facts that support actual knowledge, but there are facts that support deliberate ignorance. And the jury was properly instructed on both. There are cases where this Court has found and should continue to find that willful blindness is an appropriate instruction. And to quote the dissent in this case, you know, this is a case even stronger than Jewell or any of the deliberate ignorance cases, and if ever there was a case where Jewell was appropriate, this is surely it. So what facts would support deliberate indifference that wouldn't support actual knowledge in this case? I don't think I can – I'm trying to think if I can carve them out like that. I don't think you can. I mean, you have – well, I suppose the whole notion of the timing of her suspicion became particularly important to the question of deliberate ignorance because the jury could find she had her suspicion, but that, as the dissent notes, they were not required to credit the timing of the suspicion and therefore could find that she did have opportunity to avoid. Thank you very much, Your Honor. Mr. Shefsky, did you wish to add anything? Yes, Your Honor. I'd like to make just a few very quick questions. Judge Fragerson, Judge Hawkins, I think you hit it absolutely on the head when you said why do we need deliberate ignorance instructions. The answers that were given were, one, we need it for a case like this one, but we know that deliberate – Maybe it wasn't needed, but why was it harmless error to give it? I'm sorry, Your Honor? Maybe it wasn't needed, but why was it harmless error to give it? Well, we don't think it was. And why wasn't it? I'm sorry. Well, I think the simplest answer to your question, Your Honor, is to look at cases like – Then it's harmless, isn't it? Well, our position is not that the government could make out an actual knowledge case here. Our position is that the government has disclaimed an actual knowledge case. It did so multiple times in writing and before the Court during hearings and should be held to that representation. And when you go behind that and look at the evidence, it doesn't rise to the level of actual knowledge. Getting back to Judge Fragerson and Judge Hawkins' point, whether you need it for a case like this one, which was the answer given, what the case law reflects is that these instructions are not given just in cases like this one. Judge Randolph's opinion for the D.C. Circuit in Austin Graves makes it absolutely clear that these instructions are being given in any number of cases in which there's abundant evidence of actual knowledge. And the reason for that is that it gives the government a leg up, precisely Judge Hawkins' point. All right. Counselor, your time has expired. Thank you, Your Honor. The matter just argued is submitted for decision.
judges: Schroeder, Pregerson, Kozinski, Rymer, Kleinfeld, Hawkins, Thomas, Silverman, Graber, McKeown, Paez, Tallman, Clifton, Callahan, Bea